for the appellant, Mr. Montalvo. This court has asked myself and Mr. Rosario-Montalvo I can't hear very well. I'm sorry. The court has asked myself and co-counsel to confer about the case so we can coordinate our arguments. We've done that. I intend to address the issue of the fact that the oral sentence conflicts with the written sentence in regards to the conditions of supervised relief. That would be the Napier issue. Depending on time and if the court has interest, I would also like to briefly address whether condition number three was substantially unreasonable, unconstitutional, and vague. Ms. Richardson-Royer will probably have a few comments about how Napier affects her case, and then she'll deal with the issue as to the reasonableness of the standard conditions applied in these two cases. We would ask to reserve each of us two minutes for rebuttal. In both of these cases, the unambiguous oral sentence conflicted clearly with the written sentence, and Napier says when there's such a conflict, it's the oral sentence that controls. In Mr. Montalvo's case, the court stated just two conditions of release. The court said, don't come back to the United States. That's one condition. The other is don't violate United States law. And that's all that was said concerning any conditions of supervised release. Now, I understand that Napier also has a quote that says it's implicit that mandatory and standard conditions, they're implicit in a sentence. But that doesn't really take into effect what actually happened in Napier and what happened here. In Napier there, the district court clearly told the defendant in summary fashion about both the mandatory and standard conditions. And so the real holding of Napier is that where a district court does advise in at least a summary fashion about the mandatory and standard conditions, then there is no conflict between the oral and written sentence. But here, that didn't happen. There was absolutely no mention of mandatory or standard conditions. And it's especially troublesome in a case like here in a 1326 case where most defendants are non-native speakers. They are looking to the judge to hear what is the sentence. And when the judge says, here are the two conditions of supervised release, that person should be able to rely on that. And without any advisory from the district court, he should know that he would have no reason to know that there are these other implicit conditions out there. And a defendant should be able to rely on what the district court says, not what it subjectively intends in terms of these implicit conditions. And it's not really that much of a burden on the court here to mention at least that they exist and that they're going to apply. And especially in terms of the standard conditions, it would allow the district court a chance to... Judge Gould speaking. Mr. Spong, we seem to have lost your sound. Mr. Spong, are you there? I don't see someone on the phone. Richard? Is Richard listening? Conditions pursuant to Hall. And that's what we would ask, that these mandatory and standard conditions be stricken. We didn't hear the last two minutes of your talk. Your sound cut out. Oh. All I'm saying is that we're asking that this court revert and strike any conditions other than the two conditions that were stated by the district court. That's pursuant to Hall. And it's especially true here with the standard conditions, because I know mandatory conditions are mandatory, but standard conditions are discretionary. Counsel, excuse me. Counsel, on that point, your first position that you're taking strikes me as unrealistic and quite extreme. Because as you note, there are mandatory conditions that district court couldn't have... those had to be imposed, right? So the argument that you're making, the first argument that really only those two orally announced conditions should be imposed, doesn't that just about have to be wrong? Well, I think it's a little nuanced answer. In one sense, no. And that is in the sense of a notice to the defendant. Even the mandatory conditions, even though they're mandatory, the defendant doesn't know about them. How can you impose something, even if it's mandatory, on a defendant when a defendant has no notice? But certainly in terms... but I understand that yes, mandatory conditions are mandatory. So in terms of the standard conditions, if the rule was that they're implicit in every one, then the only way that they wouldn't apply in every case is if the district court expressly rejects them. That certainly should not be the rule for discretionary conditions. The court should have to do some reflection on it. And it shouldn't be just implied in every case. So I think there is a difference between the mandatory and standard in that respect. But in terms of the notice to the defendant, I'm not sure there is any real difference. It's really not too much of a burden to ask the court to simply say, there are mandatory conditions that are going to apply. And let the defendant then know. But to do as to here, now I have to admit that my defendant has been through the process a couple of times. But a first time 1326 defendant, non-native speaker, just simply wouldn't understand that there are all these conditions out there that the judge doesn't tell him about at the sentencing. And now they're going to apply to him. And I'm not sure that that's the correct... is not to violate federal, state, or local law. And that's implicit in what we've said. We're fighting about an issue that's really not an issue. What other mandatory conditions are there that you're worried about? What I'm worried about is the notice to the defendant. That's what I'm most worried about. The defendant was told don't come back and don't violate U.S. law. The mandatory condition says don't violate federal, state, or local law. So all we have here are two other aspects, state and local. Is that the argument that this defendant should be free to violate state and local law without violating supervised release? No, no, no. In fact, I would say because he was told of that one, that one clearly applies. He was told... So you're not arguing about mandatory conditions. You're only arguing about standard conditions. I'm arguing about the other mandatory conditions that were put in. There are other mandatory conditions about not possessing firearms and cooperating with a DNA sample. Those are also mandatory conditions. Counselor Judge Gould, if I could interject a question. So are you arguing your client should be free to not cooperate with the DNA and free to carry a firearm? In light of the district court not mentioning that? Well, I think that would be the sad result in this case. But I think that's, you know, the fact of the matter is he wasn't told that any of these were going to apply. But again, I have to concede there is a difference between mandatory and discretionary conditions. And I understand the court's reluctance. I would just say at the very least, it's not too much to ask that the district court at least advise the defendant of the mandatory. But in terms of the standard conditions, it simply can't be the case that they all apply in every case unless the district court expressly rejects them. Also, condition three here required that the defendant follow the instructions of the probation officer. This is both substantially unreasonable and unconstitutionally vague. Now, on its face, it provides absolutely no criteria, no restriction whatsoever in terms of the probation officers. Counsel, is Judge Gould interjecting? I think at the outset you said you wanted to keep a couple of minutes for rebuttal. And I've already added one minute to your clock, so I'm willing to give you two minutes of rebuttal. But to do that, we need to get to a close. Okay. Okay, Your Honor. I would just ask the court to consider our arguments on that issue, the fact that there's no criteria whatsoever, even with the added language by the commission. And with that, I'll reserve my time. Thank you. You're welcome. Good morning, Your Honors. May it please the court. Elizabeth Richardson Royer on behalf of Mr. Fuentes Castro. I do plan to spend my time this morning discussing the second issue raised in my brief, which is the unreasonableness of imposing a long list of standard conditions on defendants who are certain to be deported. But I did want to just clarify one point on the argument Mr. Spong was just making, which is that the general rule that I would propose is that normally mandatory conditions are implicit and standard conditions must be mentioned. But the reason that these cases are different is because Judge Ferns told these defendants that there were two conditions they would be under. While mandatory conditions should be able to be implicit in the normal case, where the judge affirmatively misleads the defendant to believe otherwise, I think it's unfair to impose them. And that's the only clarification. Counsel, Judge Gould, if I could just ask one quick question. So are you saying that your client should be allowed to be on supervised release and carry a gun? I believe that my client should be subject to the conditions that were imposed by the district judge in this case. And the district judge here said, I am imposing supervised release on two conditions. And then he later said, supervised release is imposed on those terms. And so while normally the mandatory conditions should apply in every case without question, I think where a district judge misleads a defendant, the court should be bound by that. Counsel, did you answer my question though? I'm asking you if you're saying that while on supervised release, your client should be able to carry a gun. I believe that in the unique facts of this case, that the answer is yes, because the district judge did not impose the condition prohibiting that. Okay, thank you. Your client was going to be deported, right? And in fact, he has been deported at this point. And you recognize that under guideline 5D1.1, I think it is, the district court has discretion to impose special conditions even though your client is deported. Absolutely, Your Honor. And so there was a special condition, don't come back. Now coming back is a violation of law. But it's also a violation of supervised release. There's an added deterrent quality to it. The district judge is saying, you come before me again, you're going to get the book. So that's the reason why he does that. But if the fellow has gone to Mexico and not allowed to come back into the country, what is the interest of anyone to have standard conditions? He doesn't have to come back to the probation office. He doesn't have to report. He doesn't have to do anything. He's out of the country. So I'm just trying to make an argument for you that in this case, and the same thing goes in Rosario. In this case, it's irrelevant what the standard conditions are. What the judge is saying, don't come back, because if you come back, I'm going to throw the book at you. That is the interest. And in that context, there of course is the mandatory condition, which can't be avoided. But the standard conditions are discretionary and may not be applicable. Am I putting words in your mouth? Yes, I would absolutely agree with your honor. And I think that goes to the first point. There are sort of two reasons why the standard conditions can't stand in this case. And one is because they're not rationally related to the goals of sentencing. Well, they are. Hold on, hold on, hold on. But maybe we should give them back to the district judge. Maybe we should remand and tell them, you be specific about what you want. Would you object to that? Forgive me. Go ahead. Would you object to that? Counselor? I'm sorry. What was the question, your honor? Would you object if we remanded to the district judge and told the district judge, be specific? I think that would solve putting aside the Napier problem, where I think that the remedy is to conform the judgment to the order of pronouncement. In terms of the procedural error that the district court made by not making an individualized determination of need, that would solve that problem. But it doesn't solve the more general due process problem, which is that when you impose any of these standards, most of them, on people who are outside of the country, they have no clear way of knowing what conduct will violate the law, when they'll be brought back to prison. So it doesn't solve the due process. I think Judge Kristen has a question. In this case, counsel, it's not just any case. This is a district judge who was really concerned about deterrence, because I think your client had been deported eight times, and the transcript is replete with references and concern to that. So I don't have any question that that was the sentencing court's primary concern, and it seems very likely that the government's argument is well taken, so I want to give you a chance to respond, that what the judge meant was that those standard conditions kick in if and when he comes back. But I agree. It didn't say that in this particular case. So if we were to send back, because we need to have clarification on that point, we would, it seems to me, avoid the constitutional question, right, about whether or not these conditions would really violate the Constitution if imposed upon someone who has been deported. We'd have that clarification. And it seems like we need to have clarification anyway, because I think there's a couple standard conditions here, four and seven, that the government, wait, that's Rosario. Is that right? Right. You don't have the outdated, I'm sorry, I'm getting my little boxes confused between the lawyers. You don't have an outdated form in your case. That's correct. Right. And so in your form on ER-5, it doesn't have the parallel language that's on ER-4 in the other case. ER-4 in the other case talks about report right away to the probation officer if you're not deported. But in your case, an updated form is used, and it doesn't have that language. So the disconnect in your case seems to me to be the oral transcript and the judge's repeated references to you can't come back to this country, and yet imposing standard conditions that really contemplate him being within the district, right? That's right, Your Honor. And I think, you know, there's an easy fix. All the court has to do is say the supervision is waived upon deportation. But because he didn't do that, we can't, you know, the government is trying to say that's what the judgment meant anyway. But it doesn't say that. Judge Gould, if I could ask this question. If we say it's waived and your client comes back to the U.S., what happens then? Then I think any properly imposed standard conditions would apply. And so that's where we get into the procedural unreasonableness of imposing all these conditions without tying them to this client. And so, you know, if you remand and say you have to make an individualized determination of the need for these conditions, and you have to say they don't apply while abroad, then we don't have a problem. Judge Howarth, I think you may have had a question there. No, it's been answered. Okay. Well, unless the court has further questions, I will reserve the remainder of my time for a call. Well, I'm here. Judge Christin. No, I'm good. Thank you. Good. No questions. We'll proceed to let the government now answer both of these, the arguments in both cases. And I think we have Mr. Howe for the U.S. Thank you, Your Honor. And may it please the court, Zach Howe on behalf of the United States. What I will try and do is address overlapping. Counsel, excuse me. Excuse me for interrupting. I'm so sorry. But you're really hard to hear. Can you speak up or speak into a microphone? Oh, my apologies. Is that better? A little bit. Make believe you're in a courtroom. Speak up. Certainly. How is that? Not good. I can hear you. I turned you up on my volume. But just so you know. Sure. Okay. I will do my best. And please feel free to stop me if you can't hear me. So I will try and address the arguments in the order presented. I'll start with the written and oral conditions, the purported conflict. Then I'll address which conditions apply in Mexico. And then, if possible, I will address some additional issues that Mr. Montalvo has raised. So beginning with the purported conflict between the written and oral conditions, this court has addressed this specific issue in an unpublished decision in De Luna Ortiz. I think the court should follow the same approach here. That case relied on this court's Napier decision. Napier says that the standard and mandatory conditions of supervised release are implicit and necessarily included in an oral pronouncement imposing supervised release. And there's some dispute over the actual holding of Napier. So maybe I can try and provide some clarification. Now, the court does say in that case that the district court summarized some of the conditions and said that other conditions would apply. That is a factual distinction. But nevertheless, the court said that was the better practice and the commendable practice, not the required practice. What the court said before talking about that best practices was that the standard and mandatory conditions are implicit and necessarily included. This is an important point on my scorecard anyway. It sounds like your view is that to apply Napier here, we would not be expanding Napier. Is that really your position? I believe that's correct. Factually, it's different. But the holding of Napier, I think, applies directly here. So here's the problem. If we were to do that, it strikes me that it is an expansion. And I'm with you. I'm like you. I've read Napier several times, and it's a little squirrely on this point. But the problem with it, of course, and I want to have the government a chance to respond, the problem is your rule that you're suggesting really doesn't allow the defendant present at the oral sentencing to object at all. If the judge doesn't even refer to the standard and mandatory, what happens to that right to be present at sentencing? Well, Your Honor, I guess I should note that the right to be present at sentencing, it's obviously an important right, and it does serve notice purposes, but it has never come without caveats attached. So to give another example, just outside of Napier, this court is willing to accept that a defendant's right to presence has been requires clarification from a written judgment. And in fact, that has been the case even when we're talking about much more punitive conditions on that issue here. So to give an example, the Green case, the ambiguity was in the custodial term itself. The Finner case from this court, the ambiguity was in whether a special condition of parole would apply or not. In the Trucello case that Napier relies on, the court has a written condition that had to clarify whether the sentence ran concurrent or consecutive. So in other words, this is not an absolute right, and we're willing to accept that either ambiguities or certain implicit conditions can later appear in a written judgment. So I think applying those well-recognized caveats here really takes care of this case. I'm going to push back on that. Forgive me for interrupting, but the time is ticking. And that's a tough argument for you to make in this case, this case being Rosario Montalvo, the first case. Because you've conceded that a couple of these conditions, standard conditions, really don't apply to this defendant. And so if the judge on the bench, if we could just imagine a hypothetical where a judge said, as the judge did in Napier, mandatory and standard conditions will follow, then there's an opportunity for a defendant or his lawyer to say, hey, a couple of those don't really apply in this case. And that would be lost here under the rule that you're suggesting we adopt. So I think that's right, Your Honor, and I think the court could easily say, particularly in Montalvo's case, that since this is going back anyway, let's just have the district court clarify exactly what it meant by that, the difference between the written and oral conditions. This one has to go back, doesn't it, counsel? Because we've got the wrong form here. So this one, okay, isn't that right? That's exactly right. So there's just really a Scrivener's clerical issue, somebody used the wrong form. So that's fine. So could we talk about Fuentes-Castro? Because I think we have the correct form here. And I'd really like to hear the government's response to the problem in this case, where it seems to me the judge is concerned because it's a serious repeat offender. He wants to deter it. So by really focusing on those two issues, I think I read it the same way Judge Hetherstein does. The district judge was saying, hey, Mr. Fuentes, if you come back, you're coming back to me. And he even says something like, and I'm not going to be happy with you. So he's using every tool he's got to deter this defendant, right? And yet the judgment doesn't say, and it would be a very easy thing to say, it doesn't say these conditions only apply if you do return from Mexico, right? It doesn't include that. So what do we do about that? I'm concerned about the doctrine of constitutional avoidance, rather than going into that due process analysis, because it seems to me that's what the district court meant here, but didn't really say it. That this one should go back, too. Do you want to respond to that inclination of mine? Certainly, Your Honor. And again, that's certainly an option that the court has, and the court could easily clear it up on remand. I don't think it's necessary in this case, and I'll point to a few reasons that I think suggest that while this isn't the clearest written judgment, it doesn't outright say the conditions don't apply, that nevertheless is the most reasonable reading. So number one, I think is that, and this is just a practical point, Puentes has been on probation since February. During that time, he has not reported to probation, reported his change of residence, shown up for his drug test. He seems to understand these conditions do not apply in Mexico, unless we were to take, you know, an uncharitable reading and say he thinks they apply, but is willfully violating them, which is, I don't think, the most reasonable interpretation. So practically speaking, he seems to know that they don't apply. A second point I'll make is that if you look at Section 3583D, it actually Doesn't that argument then support what your opponent is saying? That they shouldn't be part of the judgment? I think the defendant is acting in accordance with a notion that the standard conditions don't apply. Then maybe the judge didn't intend to apply? So, Your Honor, I think it supports the notion that the judge did not intend those conditions to apply in Mexico. But if the defendant were to illegally reenter the United States, then I think there's every reason to expect that they would and should apply. Now I take the point that my friends on the other side have made, which is that in order for the defendant to enter the United States, he would necessarily have to violate one of his conditions. But, of course, if the defendant reenters the United States, it would still be important to impose the conditions that prevent him from owning a firearm or using controlled substances or associating with known felons, because in the event of a revocation, the district court should have the full spectrum of the breach of trust, the deterrence, rehabilitation, and protection of the public aspects, and fashion an appropriate revocation and sentence. I think for that... When would supervised release begin if the defendant came back? Would these standard conditions apply only three years from the end of custody? I don't remember what term supervised release was, but whatever it was. Does it start running from the time of end of custody or does it start running from the time he comes back to the United States? I believe it would run from the end of custody. The only question would be which conditions apply. I think all Mr. Fuentes or Mr. Montalvo, for that matter, are in Mexico. Only the two conditions that the court emphasized would apply, whereas when they are in the United States, the standard and mandatory conditions would kick in. I'll note one other point, which is that to the extent my friends on the other side concede that the mandatory conditions should still apply, then I think the same analysis should apply to the standard conditions, because really we're asking the same question. Did the district court intend to include conditions that otherwise are deemed implicit in the oral pronouncement? It would be difficult to say that the district court, despite never mentioning the standard or mandatory conditions, somehow meant to get rid of one set of conditions but not another. Let me point to one final case that I think is maybe helpful in analyzing this issue, and that's the Finner case from this court. That case says that a sentence that might otherwise appear clear can be ambiguous when it would result in absurd or irrational or, in fact, illegal consequences. Here, I think the court would have to say that the district court, which we presume knows the law, intended not to impose conditions that it was required by statute under 3583D and conditions that are recommended in every single case under 5D1.3C, despite not asking for it. So I think the more reasonable approach here is just to follow the path that this court has taken in DeLuna-Ortiz and with the exception of those conditions in Montalvo that we agree should come out. Counsel, was DeLuna-Ortiz presented in the same fact pattern? That is, did the district court in that case make no mention of mandatory and supervised conditions? Orally? Yes, Your Honor. It was the exact same fact pattern, same judge, same two conditions mentioned at sentencing, and it's the same result we're recommending here. It's precisely analogous to Montalvo's case. The outdated court, why I think the court should, in his case, strike conditions 4, 7, and 8 and then remand for the court to update conditions 3, 5, and 13. So that's why it's not precisely on all fours. I'm not trying to be nitpicky here, but it's not because the government is in your candor, truly, to try to get to the right place here. I think the government is in a position of conceding that some of these conditions in Montalvo, Rosario's case, don't apply. Two of them don't apply. So that wasn't true in our recent unpublished decision. It actually was true, Your Honor. So in Montalvo, it was the same outdated form, and we conceded in that case. It was actually my conceded that the same three conditions should be stricken and that the same three additional conditions should be updated on remand. And that's what this court ultimately ordered in Una Ortiz. Okay, I'm talking about, now I'm really getting picky. I'm sorry. Some of these, the same outdated form, I'll give you that certainly. And I understand that Judge Burns has this routine, sort of a routine practice. We've seen several of these cases now, so I appreciate that point. But isn't it in Rosario's case where there's the two conditions that don't apply to him personally, four and seven? Yes, Your Honor. And I would just throw in one extra, which he didn't mention, which is condition eight. That's the alcohol condition, or excuse me, that's the controlled substances condition. That's no longer a standard condition. So we would agree to that. Okay, so seven is the one not to consume excessive alcohol, and four is to support, or in the old form, was to support dependence. And this individual, I'm just trying to, they don't seem to be exactly lining up. This individual didn't have any dependence, right? That's correct. Yeah. Okay. I believe that's correct, Your Honor. And in any event, we would agree that that condition could come out because it had vagueness problems under Evans and is no longer a standard condition. Right. Right. Right. Okay. Thank you. Yeah, I think you've answered my question. Thank you. Okay. I'll finally just note, I know my friend on the other side was going to mention condition three, which is now standard condition 13. We agree that that condition should be updated on remand. I don't think the court needs to preemptively address whether the updated condition has any vagueness problems, but I will simply note that this court has already rejected that claim in an unpublished decision. That's the Ewens case, and so I could easily follow the same route here. I'll just briefly turn, it wasn't mentioned, but I want to make sure I at least hit on the argument that Montalvo's sentence, his custodial sentence, was substantively and procedurally unreasonable. The first point is that this court has already said in the Rosales-Gonzalez case that it will not review claims about departure under the procedural error framework. It looks at departures, including FASTER Act departures, for substantive unreasonableness. So I think the court should do the same here. Now, when you reach that question, I think the court should conclude that there is nothing unreasonable about the 41-month custodial term given Mr. Montalvo's eight prior deportations, his prior criminal history, including two prior immigration offenses, and what the court really emphasized at page 20 of the record, which is that the defendant was not deterred by a sentence that was only four months shorter than the one he got here from returning to the United States. So I think for those reasons, the court should find that the sentence was procedurally and substantively sound. If there are no other questions, then I would ask that the court affirm, again, with the exception of those conditions mentioned as to Montalvo, where we agree certain conditions should be struck and certain should be updated on remand. And if there are no other questions, then I'm happy to yield the remainder of my time to the court. No questions. No questions. Not here. Also, no questions. Chair, so we'll return to appellants for rebuttal arguments. Thank you, Your Honor. This is Larry Spohn. I'd like to address briefly what government counsel said, the same standards should apply to the mandatory and standard conditions. But there's a very distinct difference why that should not be the case, and that's because the standard conditions are discretionary. Mandatory conditions can't be objected to, but discretionary conditions can be objected to. And if there's no opportunity to object, there's no notice, then there's just simply no way that the defendant can object. And I would note that in the PSR, none of those mandatory or standard conditions are listed. All it says is in the recommendation of sentence that there be three years of supervised release with mandatory and standard conditions. Now, but that's a recommendation. That's not a finding that needs to be objected to. And frankly, that's when the defendant looks at that and his counsel says to him, this is the recommendation of the probation office. And then at sentencing, the district court doesn't mention them. He certainly should be able to rely on it. It's okay. The judge here is not taking the recommendation of the probation officer. He's only listing these two conditions. That's all I have to say in rebuttal, unless the court has any questions. No questions here, Judge Hellerstein? No questions. No questions. No, thank you. I think we are back to the Fuentes case. Okay. Thank you, Your Honor. Elizabeth Richardson-Royer. I wanted to make three brief points, if I have time. The first has to do with Judge Kristen's point about whether the position the extension of Napier. And I think that the answer is certainly yes. A holding is based on the facts of a case. And the fact of that case involved a district judge who told the defendant that standard conditions were forthcoming. The case that Napier cited, the Second Circuit case, also involved a district judge that told the defendant about the conditions that would be imposed. And as the court in that case said, even the most general allusion to the standard conditions permits their imposition. And that's right. But some mention of it has to be made. And so if the court were to hold otherwise, that would be an extension of Napier on the facts of that case. And just one other distinction I think that's important between that case and these cases is that these cases are immigration cases. And so even if you could know in an ordinary case that those conditions were  and you're not going to be able to enforce them in your supervised release in this country, you shouldn't have to assume that for a case where you're going to be deported. And I think that's a relevant distinction as well. The second point I wanted to make is just kind of a factual point. The government was saying, you know, to oppose our argument that only the two conditions mentioned should apply, the government was saying, well, it doesn't even make sense that that would be what Judge Burns intended, because that would mean that he also didn't intend to impose the mandatory condition. And, you know, whether he's allowed to do that or not, he has in recent cases and perhaps in response to the series of appeals that have challenged, you know, judgments like this has recently done exactly that, where he has entered judgments with terms of supervised release that just have those two conditions. So, you know, just to the extent the government is saying no way he intended that, he's done it. And that could be some issue for the government to appeal maybe, but it certainly is something that he probably did intend and does intend in other cases. And then the only last point I would make is, you know, the government urges the court to follow the non-published decision in De Luna Ortiz. And I just think, you know, these cases keep coming up, coming out of Judge Burns' courtroom and up in other contexts. And so I think just, you know, following that case, which had really no reasoning to it, I think would be a mistake. And so I urge the court to make clear that the court needs to state the conditions that it's imposing. Okay. Thank you, counsel. Are there any questions from my colleagues? No. Okay. Hearing none. No questions. Both the Rosario-Montalvo case and the Fuentes-Castro case shall now be submitted. And I would like to express thanks again to all counsel on both sides of the panel. I think the counsel argued positions that they expressed. These are really a good benefit for the panel members to help us determine our results. So thank you for your advocacy on the cases. Those two cases shall be submitted.
judges: Gould, Christen, Hellerstein